OPINION
{¶ 1} Defendant-appellant, Christopher W. Ridley, appeals from the November 10, 2003 judgment entry of the Franklin County Court of Common Pleas, finding him guilty of having a weapon while under disability and sentencing him to 11 months incarceration. For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} On March 11, 2002, appellant was indicted on two counts of aggravated robbery with firearm specifications, four counts of robbery with firearm specifications, one count of carrying a concealed weapon, and one count of having a weapon while under disability. Appellant's case was tried before a jury on September 3, 2003. Appellant waived his right to a jury trial as to the having a weapon while under disability count of the indictment.
 {¶ 3} The following facts were elicited from the September 3 trial. On March 1, 2002, Felecia Thomas (formally known as Felecia Price) and Shanette Wynn (formally known as Shanette Brewer), were robbed at gunpoint as they sat in their car in the parking lot of the C S Lounge and Restaurant. The perpetrator, later identified as codefendant Donald Day ("Day"), opened the driver's side door of the car, pointed a gun towards the women and told them to give him their purses, cell phones, and anything else they possessed. Before exiting the car, Day told Thomas to drive off and to keep going.
 {¶ 4} Thomas, as she was backing out of the parking space, looked through her rearview mirror and observed a late model Lincoln or Cadillac model type banana yellow color car with a white roof, parked behind her. The driver's side door of the car was ajar, with the interior light on, which allowed Thomas to see the interior of the vehicle. Thomas described the man sitting in the driver's seat as a tall, huge black male, with a rough face and a goatee, wearing a leather jacket, a brown sweater with a matching toboggan hat, black jeans and dark boots. (Vol. I, Tr. 37-38.) Thomas testified that Day got into the driver's side of the yellow car and the man, later identified as appellant, slid over to the passenger's seat. (Vol. I, Tr. 45.) Wynn never observed appellant or the vehicle. (Vol. III, Tr. 190.)
 {¶ 5} Thomas drove to a nearby BP gas station and called 911. Officers Bret Bodell and Jack Morris arrived to take the victims' statements. Thomas gave an account to the officers of what happened, along with a description of Day and appellant. Wynn testified that she was very upset and was only able to give the officers a description of her property that was stolen. (Vol. III, Tr. 182.) She testified that Thomas was the one who gave the officers a physical description of Day and appellant. Id. Officer Bodell aired the descriptions of the suspects and that of the car.
 {¶ 6} Later that morning, around 4:30 a.m. to 5:00 a.m., Officers Bodell and Morris noticed a yellow car and occupants that matched the description given by Thomas. The officers stopped the car on a traffic violation. (Vol. III, Tr. 80.) Appellant was driving. Officer Bodell patted appellant down, but did not find a weapon in appellant's possession. (Vol. III, Tr. 86-87.) Appellant was placed in the back of the paddy wagon, but was not handcuffed. Officer Bodell ordered Day out of the vehicle and Officer Morris conducted the pat down on Day. No weapon was found in Day's possession. Day was also placed in the paddy wagon and was not handcuffed. Officer Bodell testified that the size of Day and appellant made it "extremely difficult" to find any weapon in their possession.[1] (Vol II, Tr. 125.)
 {¶ 7} Officers Bodell and Morris called for backup. After backup arrived, Officers Bodell and Morris searched the vehicle. Officer Morris testified that he found a white toboggan in the glove compartment and two cell phones in plain view in the front seat of the vehicle. The cell phones were confirmed as belonging to the victims.
 {¶ 8} After searching the car, the officers found no weapon. As the officers were discussing where the firearm could be, they noticed movement in the paddy wagon. Officer Morris opened the door to the paddy wagon and noticed that his riot gear bag had been moved. Officer Morris retrieved his bag, opened it, and found a loaded firearm. Officer Bodell testified that the only other individuals that were in the back of the paddy wagon, aside from Day and appellant, were Thomas and Wynn. (Vol II, Tr. 124.) Officers Bodell and Morris entered the paddy wagon, handcuffed Day and appellant, separated them and did a secondary search of the wagon for additional weapons.
 {¶ 9} Upon finding the victims' possessions, Officer Bodell telephoned Thomas. He told her to contact Wynn so they could both come to the scene to observe the possible suspects. Officer Scott Leroy was one of the officers called that evening as backup. Officer Leroy testified that it was his duty to assist Thomas and Wynn in the show-up identification of the possible suspects. (Excerpt of Proceedings, August 20, 2003, Tr. 26.) Officer Leroy kept Thomas and Wynn separated. First, Officer Leroy had Thomas sit in the back of his cruiser and instructed her look out of the front window. The cruiser was about 25 to 35 yards away from where the suspects were. The headlights from Officer Leroy's cruiser served as a spot light. Day was the first person presented for identification. Thomas recognized Day as being at the scene of the robbery. Appellant was next placed in the spot light and Thomas immediately recognized appellant as the person that robbed her at gunpoint. In court, Thomas identified Day as the one who actually committed the robbery. Thomas testified that she was 100 percent sure that Day was the person who had the gun. (Vol. I, Tr. 50-51.) Thomas further testified that she was also 100 percent sure that appellant was the individual sitting in the car. (Vol. I, Tr. 50, 52.)
 {¶ 10} Wynn followed the same procedures and identified Day as the man who opened the door of Thomas' car and robbed them at gunpoint, but did not recognize appellant. Wynn made an in-court identification of Day as the man with the gun. (Vol. III, Tr. 190.)
 {¶ 11} On September 3, the jury found appellant not guilty of aggravated robbery, robbery, and carrying a concealed weapon. The trial court found appellant guilty of having a weapon while under disability. The trial court imposed an 11-month sentence, which was suspended for time served. It is from this entry that appellant appeals, assigning the following sole assignment of error:
The trial court erred when it entered judgment against the defendant when the evidence was insufficient to sustain a conviction and was not supported by the manifest weight of the evidence.
 {¶ 12} In his sole assignment of error, appellant generally challenges the sufficiency and weight of the evidence to support his conviction of having a weapon while under disability. Our review of the record reveals, however, that appellant's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence.
 {¶ 13} Sufficiency of the evidence is the legal standard applied to determine whether the case should have gone to the jury. State v.Thompkins (1997), 78 Ohio St.3d 380, 386. In other words, sufficiency tests the adequacy of the evidence and asks whether the evidence introduced at trial is legally sufficient as a matter of law to support a verdict. Id. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, syllabus paragraph two, following Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Jenks, at 273. If the court determines that the evidence is insufficient as a matter of law, a judgment of acquittal must be entered for the defendant. See Thompkins, at 387.
 {¶ 14} Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence.Thompkins, at 387. In so doing, the court of appeals, sits as a "thirteenth juror" and, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id. (quoting State v. Martin [1983], 20 Ohio App.3d 172, 175); see, also, Columbus v. Henry (1995), 105 Ohio App.3d 545, 547-548. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins, at 387.
 {¶ 15} Here, appellant was found guilty of having a weapon while under disability in violation of R.C. 2923.13(A), which states in pertinent part:
Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
* * *
(3) The person * * * has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse * * *.[2]
 {¶ 16} Appellant's sole argument hinges on the notion that he did not possess the weapon on the night of the robbery. Appellant argues that there was a lack of evidence that he was a co-conspirator or assisted Day in the robbery. Appellant contends that the only evidence linking him to the weapon is Thomas' statement made to Officer Leroy at the time of the show-up identification, where Thomas mistakenly identified appellant as the individual who committed the robbery. Appellant notes that, at trial, both Thomas and Wynn testified that they were both 100 percent sure that Day was the individual that committed the armed robbery and not appellant.
 {¶ 17} Appellant argues that the trial court should have given little or no credibility to the statements made by Thomas to Officer Leroy during the show-up identification of the possible suspects. Appellant argues that the reliance by the trial court of Thomas' inconsistent identification renders his guilty verdict against the manifest weight of the evidence, as the evidence was insufficient and unreliable. While appellant questions the weight the trial court gave to the testimony before it, how much weight to give the witnesses' testimony and the resolution of any inconsistencies were matters for the trial court to resolve. State v. Archie, Lucas App. No. L-02-1225, 2004-Ohio-4844; Statev. Kash, Butler App. No. CA2002-10-247, 2004-Ohio-415.
 {¶ 18} In order to "have" a firearm, one must either actually or constructively possess it. State v. Hardy (1978), 60 Ohio App.2d 325,327; State v. Messer (1995), 107 Ohio App.3d 51, 56. "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." State v. Wolery (1976), 46 Ohio St.2d 316, 329, certiorari denied, 429 U.S. 932, 97 S.Ct. 339. Constructive possession may also be achieved by means of an agent. Hardy, at 327; U.S. v. Clemis
(C.A.6, 1993), 11 F.3d 597, certiorari denied, 511 U.S. 1094, 114 S.Ct. 1858
(constructive possession of a firearm exists when a defendant knowingly has the power and intention at any given time to exercise dominion and control over a firearm, either directly or through others). Moreover, we recognize that constructive possession of a weapon, even absent actual physical possession, may be established by a totality of evidence establishing an accomplice relationship between the physical possessor and his or her accomplice. State v. McConnell (Oct. 13, 1983), Cuyahoga App. No. 45294.
 {¶ 19} From the testimony, it appears that, although co-defendant Day used the weapon to commit the robbery, appellant had knowledge of its presence. Appellant waited in the car, while Day robbed Thomas and Wynn. Appellant was in the car with Day when Officers Bodell and Morris pulled them over. While in the paddy wagon, both Day and appellant were in close proximity so that the gun was easily accessible to appellant. See Statev. Abrams (1974), 322 N.E.2d 339, 342 (constructive possession of a gun by the co-defendant is a permissible inference).
 {¶ 20} Furthermore, we cannot say that the trial court clearly lost its way or that the verdict was a manifest miscarriage of justice. Thomas' credibility was primarily for the trial court to determine. The trial court determined that it was either appellant or Day that put the weapon in the officer's riot gear bag. "* * * I do believe that the weapon could not have gotten in the van by any other means but by one of the defendants. And I can make that finding with a certainty that's beyond a reasonable doubt." (Vol. III, Tr. 367.) The trial court acknowledged the inconsistencies in Thomas' identification of appellant and looked for corroborating evidence to support its decision.
 {¶ 21} Based on the above evidence, there was sufficient evidence that appellant had constructive possession of the weapon used in the offenses in this case. For the foregoing reasons, we find that there was sufficient evidence to support appellant's conviction for having a weapon while under disability under R.C. 2923.13(A). Moreover, we further find that such a conviction is not against the manifest weight of the evidence. As a result, appellant's sole assignment of error is not well-taken.
 {¶ 22} For the foregoing reasons, appellant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Brown, P.J., and Sadler, J., concur.
[1] Appellant is taller than 6'6" and weighs in excess of 300 pounds. (Vol. III, Tr. 85.) Day is about 6'9" to 6'10" and is about 450 to 500 pounds. (Vol. III, Tr. 96.)
[2] On May 7, 1996, appellant was convicted in the Franklin County Court of Common Pleas for drug abuse, a violation of R.C. 2925.11.