[Cite as *State v. Gordon*, 2012-Ohio-4930.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97336**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## GLENROY GORDON

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-546560

**BEFORE:**  S. Gallagher, J., Stewart, P.J., and Sweeney, J.

**RELEASED AND JOURNALIZED:**  October 25, 2012

**ATTORNEYS FOR APPELLANT**

Richard G. Lillie
Gretchen A. Holderman
Lillie & Holderman
75 Public Square
Suite 1313
Cleveland, Ohio   44113-2001

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:   Margaret A. Troia
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

SEAN C. GALLAGHER, J.:

{¶1} Defendant-appellant Glenroy Gordon ("defendant") appeals his convictions for drug possession and possessing criminal tools. After reviewing the facts of the case and pertinent law, we affirm the trial court's judgment.

{¶2} This case involves a drug trafficking investigation in which the Cleveland Police Department used a confidential reliable informant ("the CRI") to set up a controlled purchase of marijuana. The police learned that the target, Reginald Cromity, was a middleman who got the marijuana from a supplier. The deal was set up for November 9, 2010, but fell through. The next day, November 10, 2010, the CRI purchased five pounds of marijuana and arranged for the delivery of three additional pounds.

{¶3} On January 28, 2011, defendant, along with Cromity, Derrick Williams, and Roy Bell, were charged with various drug-related offenses. The case proceeded to a jury trial against defendant and Bell.[1] On July 20, 2011, defendant was found guilty of two counts of drug possession in violation of R.C. 2925.11(A), with forfeiture specifications relating to a GMC van in violation of R.C. 2941.1417, and one count of possessing criminal tools in violation of R.C. 2923.24(A), with a forfeiture specification relating to the same van. Defendant was acquitted of the remaining drug-trafficking counts, as well

_____

[1] *See State v. Bell*, 8th Dist. No. 97123, 2012-Ohio-2624.

as forfeiture specifications relating to various other items. On August 25, 2011, the court sentenced defendant to three years in prison.

{¶4} Defendant appeals and raises four assignments of error for our review. His first assignment of error provides as follows:

> I. Appellant was denied his rights based upon the admission of impermissible hearsay evidence in violation of the Confrontation Clause of the Sixth Amendment as interpreted, *inter alia*, in *Bruton v. United States*.

{¶5} In the case at hand, defendant argues that Williams's testimony that codefendant Bell said the marijuana came from "Magic," which is defendant's alleged nickname, was inadmissible hearsay. The state argues this testimony is admissible as a statement by a co-conspirator.

{¶6} The following pertinent evidence was presented at trial up to and including Williams's testimony that Bell said the marijuana came from Magic.

## Police Testimony

{¶7} Cleveland Police Officer Joseph Dimuzio testified that he conducted surveillance of Klymaxx clothing store on the corner of E. 141st Street and St. Clair Avenue in Cleveland on November 10, 2010, as part of a drug investigation. Officer Dimuzio observed defendant go in and out of Klymaxx several times that afternoon, and it appeared that defendant had keys to the store.

{¶8} The police were also conducting undercover surveillance at the home of Reginald Cromity, the drug deal's "middleman." After a controlled drug buy was made

at this secondary location, Officer Dimuzio was advised to watch for a green Ford Expedition.

{¶9} The Expedition stopped at a red light near Klymaxx, and codefendant Bell exited the Expedition from the passenger side and walked into the store. Subsequently, the Expedition was driven down St. Clair Avenue. Officer Dimuzio identified Williams as the man driving the Expedition that day.

{¶10} Officer Ollie Pillow located the green Ford Expedition at a residence on Gay Avenue in Euclid. He saw the driver exit the house carrying a "mid-size" plastic bag and get into the Expedition. The Expedition headed back to "the area of 141st."

{¶11} The Expedition arrived back at Klymaxx approximately a half-hour after it had left and was parked in front of the store. Defendant exited the store, approached the driver's side of the vehicle, spoke with Williams, and went back into the store. Williams got out of the Expedition and followed defendant into Klymaxx. Williams then came out of the store, got into the Expedition, and drove away. The police stopped the vehicle a short distance away and recovered marijuana.

{¶12} When the police entered the Klymaxx store, defendant, Bell, and two or three other people were inside. After obtaining a warrant, the police searched and found a hidden compartment in the floor under the cash register. A "brick-sized" package wrapped in foil, paper towels, and plastic was inside the compartment. The package contained $12,110 in cash. Officer Dimuzio testified that the package was consistent with how drugs or drug money is bundled.

## Informant's Testimony

{¶13} The CRI testified that he worked with the police to set up this drug deal. The CRI told the police that Cromity was the middleman who could get marijuana from a supplier. The transaction was originally arranged for November 9, 2010, but the "connect never showed up," and the deal fell through. However, it was rescheduled for the next day, November 10. The police gave the CRI $7,000 in "buy money."

{¶14} The CRI and Cromity sat in Cromity's car outside of Cromity's house on E. 70th Street waiting for the suppliers to arrive. A green Ford SUV pulled in front of Cromity's house.[2] The CRI and Cromity got out of Cromity's vehicle and into the CRI's car, where the CRI gave Cromity $6,000 of the buy money for five pounds of marijauna. Cromity got into the SUV and came out less than five minutes later with a shopping bag, which he brought into the CRI's car. The CRI took the bag of marijuana and ordered three more pounds. Cromity went back to the SUV, leaned into the rear passenger door, came back to the CRI's car, and told the CRI "okay." The CRI was informed that he would receive the additional three pounds within an hour.

## Testimony of Codefendant No. 1

{¶15} Cromity testified that the CRI called him on November 9, 2010, to purchase five pounds of marijuana, and Cromity, in turn, called codefendant Bell. Bell did not

---

[2] The CRI referred to the vehicle as a green Ford Explorer. However, it was in fact Williams's green Ford Expedition.

show up that day, and they made arrangements for the deal to take place the following day.   According to Cromity, Bell worked at Klymaxx.

{¶16} Cromity and the CRI waited in Cromity's car until Bell and another man drove up in the Expedition.   Cromity testified that he did not know who the driver was, but he had seen him before with Bell.   When the Expedition arrived, Cromity got the marijuana from Bell and took it to the CRI, who had gotten into his own vehicle by this time.   The CRI gave Cromity the money and said he wanted three more pounds. Cromity relayed this information to Bell, and Bell said to give him approximately 30 minutes.   Cromity went back to the CRI, who said he would come back then.   Cromity knew defendant's nickname was "Magic."

{¶17} Cromity testified that he did not know defendant nor had he ever spoken to defendant, but he had seen him at Klymaxx on prior occasions.

Testimony of Codefendant No. 2

{¶18} Williams testified that Bell called him on November 9, 2010, and said he had marijuana if Williams knew "somebody that wants some."   Williams indicated that he knew someone interested in purchasing the marijuana.   Williams drove his green Ford Expedition to the Klymaxx store to pick up the marijuana.   Bell retrieved the marijuana from a black GMC van, which was parked in front of the store, and placed the marijuana in Williams's Expedition.   Williams had seen Bell and defendant, whom he knew as "Magic," drive the GMC van.   At this point, the following colloquy took place:

> Q: As far as the marijuana that [Bell] gave you, did you have a conversation with [Bell] about where he got the marijuana?

\* \* \*

Q: Do you need me to repeat the question, Mr. Williams?

A: Yes.

Q: When you had the conversation with [Bell] over the phone, did he tell you where the marijuana was from?

A: Yes.

Q: And what specifically, only what he told you, where the marijuana was from?

A: Magic.

Q: That was the conversation you had with him on November 9, 2010?

A: Yes.
\* \* \*

Q: What specifically did [Bell] say on November 10, 2010 as to who the marijuana was from?

A: Magic.

Q: What specifically did he say in regards to Magic?

A: Say Magic got some more.

{¶19} We review the admissibility of evidence under an abuse of discretion standard. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). In *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 116, the Ohio Supreme Court held the following:

> Under Evid.R. 801(D)(2)(e), hearsay does not include a statement offered against a party that is made "by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of

the conspiracy." "The statement of a co-conspirator is not admissible pursuant to Evid.R. 801(D)(2)(e) until the proponent of the statement has made a prima facie showing of the existence of the conspiracy by independent proof." *State v. Carter* (1995), 72 Ohio St.3d 545, 1995-Ohio-104, 651 N.E.2d 965, paragraph three of the syllabus. Evid.R. 801(D)(2)(e) does not require that explicit findings of the conspiracy be made on the record.

{¶20} Defendant claims that there was no prima facie showing of any conspiracy involving defendant prior to the admission of the subject co-conspirator's statements. We do not agree.

{¶21} Our review reflects that at the time the co-conspirator's statements were admitted, the state had made a prima facie showing of the existence of an ongoing conspiracy to sell drugs involving defendant, Bell, Williams, and Cromity. The testimony established that defendant worked at Klymaxx and had keys to the store. He was present during the course of the drug-related activities. His coworker, Bell, retrieved the marijuana from a black GMC van, which defendant was associated with driving. Williams drove Bell to deliver the marijuana to Cromity, who was the middleman. Cromity exchanged the drugs for money from the CRI, who then asked for three additional pounds of marijuana. After the initial sale had been made and while the additional sale was being pursued, defendant was observed conversing with Williams, who was in his Expedition outside Klymaxx and then followed defendant into the store. After Williams left, he was stopped by police, and marijuana was recovered. Police recovered from a hidden compartment inside the Klymaxx store a package that contained

$12,110 in cash and was packaged in a manner consistent with money involved in the drug trade.

**{¶22}** Upon this evidence, we find the state set forth a prima facie showing that defendant was involved in a conspiracy to sell drugs. While the better practice would have been for the state to also have introduced the evidence about defendant being the owner of the Klymaxx store and having "buy money" recovered from his person prior to the admission of the co-conspirator's statements, this was not fatal to its prima facie showing.

**{¶23}** Furthermore, Bell's statements about defendant being the source of the marijuana were made during and in furtherance of the conspiracy as required under Evid.R. 801(D)(2)(e). Bell was actively involved in a conspiracy to sell drugs and was relating to a co-conspirator the origin of those drugs. Williams's testimony about Bell's statements was not merely "narrations of past events, casual conversations, mere disclosures, or boasts" that were "not made in furtherance of the conspiracy." These were direct statements about the supplier of the drugs that were made while the sale of the drugs was being pursued. Likewise, this was not an attempt to deflect responsibility to a third party. Williams's account of Bell's statement did not exculpate either Williams or Bell.

**{¶24}** Finally, while we understand the concerns that underlie the Confrontation Clause, it has been established that the Confrontation Clause is not violated by the admission of statements made by a co-conspirator in furtherance of the conspiracy.

*State v. Braun*, 8th Dist. No. 91131, 2009-Ohio-4875, ¶ 115-118.    Therefore, we overrule the first assignment of error.

**{¶25}** Defendant's remaining assignments of error provide as follows:

II.    Appellant's conviction was not supported by sufficient evidence.

III.    Appellant's conviction was against the manifest weight of the evidence.

IV.    Trial Court erred and abused its discretion in denying Appellant's Rule 29 Motion for Acquittal.

**{¶26}** In addition to the evidence discussed above, the following pertinent evidence was introduced at trial.    When Williams went to obtain the marijuana at the Klymaxx store on November 9, 2010, Bell retrieved five pounds of marijuana from a black GMC van parked in front of the store and placed it in Williams's Expedition. Williams took the marijuana to a Save-A-Lot store, but the intended purchaser did not show up.    Thereafter, Bell called Williams and stated that if Williams had not used the marijuana, Bell needed it back.    Williams then met with Bell, and the two drove to Cromity's residence.    Bell got out of the vehicle and spoke to Cromity; however, no sale of marijuana occurred at this time and the marijuana was returned to Bell.

**{¶27}** The following day, after being informed by Bell that "Magic got some more," Williams went back to the Klymaxx store.    This time he picked up eight pounds of marijuana from Bell.    After the person to whom Williams initially tried to sell the marijuana again failed to appear, Williams took the eight pounds of marijuana to his home.    Later that day, Bell called him and asked for five pounds back.    When Williams

returned to the Klymaxx store, Bell entered the Expedition and they went back to Cromity's residence. Williams parked behind the CRI's vehicle. Cromity entered the Expedition's back seat, and Bell gave the bag of marijuana to Cromity. Cromity then went and exchanged the drugs for money with the CRI, who asked for three additional pounds. After the additional marijuana was ordered, Williams dropped Bell off at the Klymaxx store and went to retrieve the three additional pounds he had left at his home. When Williams returned to the Klymaxx store, Bell asked him to deliver the marijuana to Cromity. When Williams left the store, he was pulled over by the police.

{¶28} Police recovered marijuana from Williams's Expedition, as well as $250 of the buy money from his person. The police recovered $4,500 of buy money from Williams's wife as she was leaving home. After defendant was arrested, police recovered two cell phones and $3,200 from his person, of which $250 was buy money. Numerous credit cards, business cards, and insurance cards in multiple names were found on defendant's person.

{¶29} Police found $12,110 in a hidden compartment in the Klymaxx store. The 2001 GMC van was registered to CIGAM Investments. CIGAM is "Magic" spelled backwards. Police recovered from the van a scale, a money-counting machine, a cell phone, and miscellaneous papers. There was testimony establishing that the set-up of the operation was consistent with that of a drug organization. The police had previously learned that the owner of the store was the supplier of the marijuana purchased.

**{¶30}** Defendant was convicted of two counts of drug possession in violation of R.C. 2925.11(A), for the five and three pounds of marijuana, with the forfeiture specifications relating to the 2001 GMC van. He was also convicted of one count of possessing criminal tools in violation of R.C. 2923.24(A), with a forfeiture specification relating to the same van.

**{¶31}** Defendant claims that there was insufficient evidence to support the convictions for drug possession and possessing criminal tools and that the convictions were against the manifest weight of the evidence. He further claims the trial court erred in denying his motion for acquittal. Defendant argues that there was no evidence that he "possessed" anything or that he was involved in any criminal activity, and he claims that co-conspirator statements lacked credibility. We find no merit to his arguments.

**{¶32}** When an appellate court reviews a claim of insufficient evidence, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The weight given to the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. A motion for acquittal under Crim.R. 29(A) is governed by the same standard used for determining whether a verdict is supported by sufficient evidence. *Tenace* at ¶ 37.

**{¶33}** When reviewing a claim challenging the manifest weight of the evidence, the court, after reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the exceptional case in which the evidence weighs heavily against the conviction. *Id.*

**{¶34}** R.C. 2925.11(A), possession of drugs, provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." R.C. 2923.24(A), possessing criminal tools, provides that "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." "Possess" or "possession" means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).

**{¶35}** "Possession" may be either actual physical possession or constructive possession. *State v. Jackson*, 8th Dist. No. 97743, 2012-Ohio-4278, ¶ 38, citing *State v. Haynes*, 25 Ohio St.2d 264, 269-270, 267 N.E.2d 787 (1971). "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within the individual's immediate physical possession."

*State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus. Constructive possession may be established by circumstantial evidence. *State v. Baird*, 8th Dist. No. 96352, 2011-Ohio-6268, ¶ 19. Further, constructive possession may be established by a totality of evidence establishing an accomplice relationship between the physical possessor and his or her accomplice. *State v. Ridley*, 10th Dist. No. 03AP-1204, 2005-Ohio-333, ¶ 18.

{¶36} In this case, defendant's conviction was supported by circumstantial evidence. The evidence was sufficient to demonstrate constructive possession and an accomplice relationship. The evidence reflects that defendant owned and had keys to the store around which the drug activity was centered. Police recovered over $12,000, packaged consistent with how drug money is concealed, from a hidden compartment inside the Klymaxx store. The black GMC van in which the marijuana was stored was parked in front of the store, and defendant was present at the store while the drugs were retrieved from the van by Bell and placed in Williams's Expedition. The GMC van was registered to an entity with the reverse spelling of "Magic." Defendant had been seen driving this vehicle, and personal papers belonging to defendant were in the vehicle. A co-conspirator identified "Magic" as the supplier of the marijuana. Defendant spoke to Williams after the initial sale was made and while the additional quantities were being pursued. Police recovered a scale, a money-counting machine, and a cell phone from the van, and buy money was located on defendant's person. Additionally, there was evidence showing that defendant, Bell, Williams, and Cromity, were all accomplices in

the sale of the marijuana. The jury was in the best position to assess the credibility of the witnesses.

**{¶37}** Upon our review, we find that there was sufficient evidence to support the convictions and the convictions were not against the manifest weight of the evidence. Further, the trial court did not err in denying the motion for acquittal.

**{¶38}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, JUDGE

MELODY J. STEWART, P.J., CONCURS;
JAMES J. SWEENEY, J., DISSENTS WITH SEPARATE OPINION

JAMES J. SWEENEY, J., DISSENTS:

**{¶39}** I respectfully dissent from the majority opinion affirming defendant's convictions and would instead reverse the court's judgment based on the prejudicial error

of admitting into evidence Bell's statements implicating defendant as the source of the marijuana.

{¶40} Assuming arguendo that the State presented independent evidence linking defendant to a conspiracy, in my opinion, Bell's statements that the drugs were from "Magic" were not made in furtherance of the conspiracy, as required under Evid.R. 801(D)(2)(e). Under the facts of the case at hand, the isolated statements identifying the source of the drugs had no purpose in advancing or furthering the conspiracy; in fact, Bell's statements implicating defendant were entirely unnecessary to prove the conspiracy.

{¶41} Generally, "narrations of past events, casual conversations, mere disclosures, or boasts are usually not made in furtherance of a conspiracy." Bennett, *Litigating the Admissibility of Co-Conspirators' Statements: A Defense Attorney's Perspective*, 18 AMJTA 325, 329 (1994).

> Statements which simply implicate one coconspirator in an attempt to shift the blame from another * * * cannot be characterized as having been made to advance any objective of the conspiracy. On the contrary, statements that implicate a coconspirator, like statements that "spill the beans" concerning the conspiracy, are not admissible under Rule 801(d)(2)(E).

{¶42} *U.S. v. Blakey*, 960 F.2d 996, 998 (C.A.11 1992). The *Blakey* court held that a "statement pointing the finger to [the] defendant as the source of the falsified check could hardly be considered to have advanced any object of the conspiracy. It is precisely the type of hearsay statment which cannot be admitted against a defendant." *Id.* at 998-999. *See also U.S. v. Silverman*, 861 F.2d 571, 578 (C.A.9 1988) ("[w]hen the

out-of-court statement is one made by a co-conspirator purporting to implicate others in an unlawful conspiracy, its reliability is doubly suspect").

{¶43} The testifying witness in the instant case was a co-defendant who pled guilty, and the declarant was a co-defendant who went to trial but did not testify against defendant, thus eliminating the opportunity for cross-examination. The United States Supreme Court has consistently "spoken with one voice in declaring presumptively unreliable accomplices' confessions that incriminate defendants." *Lee v. Illinois*, 476 U.S. 530, 541, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986). *See also Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999); *Bruton v. U.S.*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *State v. Madrigal*, 87 Ohio St.3d 378, 721 N.E.2d 52 (2000).

{¶44} I would additionally find that the statements were highly prejudicial to defendant. The testimony was drawn out by the State as prompted responses to leading questions. The statements that Bell made to Williams were out-of-the-blue, and the context of the conversation was never established. Because the remarks appear to be isolated, rather than part of a larger dialogue, there is no frame of reference from which the jury can ascertain their reliability.

{¶45} Accordingly, I would reverse the court's judgment, vacate defendant's convictions, and remand the case for a new trial.