[Cite as *State v. Byrd*, 2012-Ohio-5728.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No.   98037

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JAMIE W. BYRD

DEFENDANT-APPELLANT

---

**JUDGMENT:
AFFIRMED IN PART, REVERSED
IN PART, AND REMANDED**

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-548242

**BEFORE:**   E. Gallagher, J., Boyle, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:**    December 6, 2012

**ATTORNEY FOR APPELLANT**

Ruth Fischbein-Cohen
3552 Severn Road
Suite 613
Cleveland Heights, Ohio   44118

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:    Andrew J. Santoli
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

EILEEN A. GALLAGHER, J.:

{¶1}    Jamie Byrd appeals from his convictions rendered in the Cuyahoga County Court of Common Pleas.   Byrd argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.   Byrd also argues that the trial court failed to properly advise him of postrelease control.   For the following reasons, we affirm, in part, and reverse, in part.

{¶2}    Byrd was indicted on March 21, 2011, and charged with two counts of drug trafficking in violation of R.C. 2925.03(A), drug possession in violation of R.C. 2925.11,

possessing criminal tools in violation of R.C. 2923.24(A) and trafficking in or illegal use of food stamps in violation of R.C. 2913.46(B).[1]

{¶3}    The following facts were adduced at Byrd's jury trial.

{¶4}    Upon receiving information from a confidential informant regarding alleged drug trafficking conducted by Jamie Byrd at a house located at 1408 West 77th, Detective Robert Klomfas of the city of Cleveland Division of Police contacted Byrd using an undercover vice drug phone. While law enforcement officers conducted surveillance at 1408 West 77th on March 10, 2011, Byrd returned Klomfas' phone call and agreed to sell him $20 of crack cocaine.

{¶5}    Cleveland police detective John Pitts observed Byrd leave the home in a gold Oldsmobile Cutlass. Byrd contacted Klomfas and changed the location of the drug buy to the area of Detroit and West 107th. Byrd was pulled over and arrested at an apartment building on West 107th and Detroit and the planned drug buy did not occur. The cellphone number that Klomfas had called to arrange the drug purchase with Byrd was found on Byrd's person. Lieutenant Louis Pipoly testified that Byrd admitted that he had a .380-caliber handgun in the home. No drugs were recovered on Byrd's person at the time of his arrest.

{¶6}    A search of the home at 1408 West 77th uncovered a loaded .380-caliber

---

[1]Byrd's two counts of drug trafficking each contained firearm, juvenile, schoolyard and forfeiture specifications. Byrd's drug possession count contained firearm and forfeiture specifications.

semiautomatic handgun found in a kitchen cabinet alongside a glass jar containing 73 grams of crack cocaine. Two digital scales that Detective Klomfas testified were of the type commonly used to weigh and measure drugs, were also recovered from the kitchen along with sandwich bags commonly used as packaging material for drugs. Both scales, as well as a recovered spoon, tested positive for cocaine residue.

{¶7} Bank checking passports, identification and deposit slips were found in Byrd's padlocked room on the second floor of the residence. A bag containing one rock of crack cocaine and a box containing .380-caliber ammunition were discovered in Byrd's room. Also recovered from Byrd's room was $1,083 in cash as well as a bag of white powder that tested negative for narcotics. Erica Gates testified that she lived at 1408 West 77th with her five children, Byrd and Byrd's girlfriend. Gates and Byrd had been friends since childhood. She testified to directing Lt. Pipoly to the kitchen cabinet where the handgun and jar of crack cocaine were recovered. She testified that she does not use that cabinet that is high off the ground and that the cabinet was used exclusively by Byrd. Gates further testified that the jar of cocaine and gun belonged to Byrd.

{¶8} The jury returned a guilty verdict on one count of drug trafficking with a one-year firearm specification, drug possession with a one-year firearm specification and possessing

criminal tools.[2]   The jury returned a not guilty verdict on the second count of drug trafficking and the trial court dismissed the charge of trafficking in or illegal use of food stamps.   The trial court sentenced Byrd to one-year prison terms for drug trafficking and possessing criminal tools and a three-year prison term for drug possession.   The trial court sentenced Byrd to one year on the firearm specifications to be served prior to and, consecutive with, the three-year prison term for drug possession.   The trial court additionally imposed five years of postrelease control pursuant to R.C. 2967.28.   It is from this judgment that Byrd appeals.

{¶9}   Byrd's three assignments of error he raises for review state:

Assignment of Error I

The conviction was insufficient to convict defendant.

Assignment of Error II

The conviction was against the manifest weight of the evidence.

Assignment of Error III

The Court failed to instruct Jamie Byrd relative to post release control as mandated by law.

{¶10} Byrd argues that there was insufficient evidence to convict him of the crimes of drug trafficking, drug possession and possessing criminal tools.   For the reasons stated below,

---

[2]Each count contained forefeiture specifications. The juvenile and schoolyard specifications attached to the drug trafficking charge were dismissed by the trial court.

we affirm Byrd's convictions with the sole exception of his conviction for the one-year firearm specification attached to his drug trafficking charge.

{¶11} This court has said, in evaluating a sufficiency of the evidence argument, courts are to assess not whether the state's evidence is to be believed but whether, if believed, the evidence against a defendant would support a conviction. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. The weight and credibility of the evidence are left to the trier of fact. *State v. Jackson*, 8th Dist. No. 86542, 2006-Ohio-1938, ¶ 23.

{¶12} Byrd was convicted of a fifth-degree felony charge of drug trafficking in violation of R.C. 2925.03(A)(1), which reads: "(A) No person shall knowingly do any of the following: (1) Sell or offer to sell a controlled substance; * * *."

{¶13} Byrd was also convicted of a first degree felony charge of drug possession in violation of R.C. 2925.11(A), which reads:

(A) No person shall knowingly obtain, possess, or use a controlled substance.

* * *

(C)(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows: * * *

(e) If the amount of the drug involved equals or exceeds twenty-seven grams but is less than one hundred grams of cocaine, possession of cocaine is a felony of the first degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree."[3]

{¶14} The drug trafficking and possession counts both contained one-year firearm specifications under R.C. 2941.141, which states in pertinent part: "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense."

{¶15} Finally, Byrd was convicted of a fifth-degree felony charge of possessing criminal tools in violation of R.C. 2923.24, which reads:

(A) No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally.

* * *

(C) * * * If the circumstances indicate that the substance, device, instrument, or article involved in the offense was intended for use in the commission of a felony, possessing criminal tools is a felony of the fifth degree.

{¶16} "Possess" or "possession" means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or

---

[3]H.B. 86 eliminated the felony classification distinctions between crack cocaine and cocaine in R.C. 2925.11(C). Although appellant's offenses occurred on March 10, 2011, prior to the effective date of H.B. 86, pursuant to R.C. 1.58(B) he is entitled to any reduced penalty as his sentence was not imposed until after the effective date of the amendments. Prior to the H.B. 86 amendment, R.C. 2925.11 required in excess of 25 grams and less than 100 grams of crack cocaine for the possession offense to qualify as a first-degree felony. *See, e.g.*, *State v. Limoli*, 10th Dist. No. 11AP-924, 2012-Ohio-4502, ¶ 61-62.

occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K); *State v. Gordon*, 8th Dist. No. 97336, 2012-Ohio-4930, ¶ 34-35.

{¶17} "Possession" may be either actual physical possession or constructive possession. *State v. Jackson*, 8th Dist. No. 97743, 2012-Ohio-4278, ¶ 38, citing *State v. Haynes*, 25 Ohio St.2d 264, 269-270, 267 N.E.2d 787 (1971). "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within the individual's immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus. Constructive possession may be established by circumstantial evidence. *State v. Baird*, 8th Dist. No. 96352, 2011-Ohio-6268, ¶ 19.

{¶18} The elements of an offense may be established by direct evidence, circumstantial evidence, or both. *State v. Durr*, 58 Ohio St.3d 86, 568 N.E.2d 674 (1991). Circumstantial and direct evidence are of equal evidentiary value. *State v. Santiago*, 8th Dist. No. 95333, 2011-Ohio-1691, ¶ 12.

{¶19} In the case sub judice, the testimony of detective Klomfas established each of the essential elements of Byrd's drug trafficking conviction in relation to his offer to sell crack cocaine to the detective.

{¶20} With respect to Byrd's convictions for drug possession and possessing criminal tools, the testimony of Gates as well as the testimony of the law enforcement officers, in

conjunction with Byrd's own admissions and the physical evidence recovered from the kitchen and Byrd's bedroom provided both circumstantial and direct evidence of Byrd's constructive possession of the jar containing 73 grams of crack cocaine, the .380-caliber handgun, the two digital scales with cocaine residue, the bag containing a rock of cocaine and the bag containing white powder.

{¶21} This court does take issue, however, with the one-year firearm specification attached to Byrd's drug trafficking conviction. This court has previously held that the state may show a defendant has dominion or control over a weapon for purposes of R.C. 2941.141 by proving constructive possession. *State v. Easterly*, 8th Dist. No. 94797, 2011-Ohio-215, ¶ 24, citing *State v. Davis*, 8th Dist. No. 93844, 2010-Ohio-5123; *State v. Wilkins*, 12th Dist. No. CA2007-03-007, 2008-Ohio-2739; *State v. Conway*, 8th Dist. No. 86140, 2005-Ohio-6634.

{¶22} This court has previously found sufficient evidence to support firearm specifications attached to drug possession counts in instances where the firearm is recovered in close proximity to the drugs. In *Easterly*, we upheld such a firearm specification where the defendant was arrested in one part of a building and drugs were found in the defendant's office and a gun was recovered from a box on the desk in the office. We rejected a sufficiency challenge in *Easterly* where the defendant argued that constructive possession of the firearm could not be established because he was not located near the gun when it was recovered. We

explained that, "[u]nder the totality of the circumstances, reasonable minds could conclude that the gun belonged to Easterly and was under his control, and that he used it in the commission of the charged offenses." *Id.* at ¶ 25.

{¶23} In *State v. Benton*, 8th Dist. No. 82810, 2004-Ohio-3116, this court upheld a firearm specification attached to a drug possession charge where the defendant was arrested in his home and drugs and a firearm were found in his wife's car in a detached garage. The defendant admitted that the drugs and gun belonged to him but argued that he did not possess the firearm during the commission of the drug possession offense for the purposes of R.C. 2941.141. This court rejected Benton's argument and explained that

> "the underlying purpose of the gun specification [is] to deter possession or control of firearms during the commission of crimes due to the safety hazards such possession or control poses to the public and arresting officers." Given that purpose, and in light of his admission that the gun belonged to him, it is apparent that Benton had sufficient control over the firearm during the commission of the underlying drug possession offense to pose a threat, if not to the arresting officers, to the public. (Citations omitted.)

*Id.* at ¶ 30, quoting *State v. Mills*, 10th Dist. No. 98AP-1273 (Sept. 28, 1999), citing *State v. Powell*, 59 Ohio St.3d 62, 63, 571 N.E.2d 125 (12th Dist.1991).

{¶24} Similarly, in the present instance, sufficient evidence exists to uphold Byrd's conviction for the firearm specification attached to his drug possession count. Byrd admitted to the officers at the time of his arrest that he possessed a .380-caliber handgun at the residence

and the same was recovered in the cabinet where the jar of crack cocaine was discovered. Ammunition of the same caliber was recovered from Byrd's room in the house and Gates testified that both the gun and the drugs belonged to Byrd and that Byrd exclusively used the cabinet from which they were recovered. However, absolutely no evidence exists on the record connecting the recovered firearm to Byrd's drug trafficking offense stemming from his phone call with Klomfas wherein he agreed to sell crack cocaine to Klomfas. No evidence was presented to demonstrate that Byrd either actually, or constructively, possessed the firearm in connection with this phone conversation, nor did Byrd possess the firearm at the time of his arrest en route to the agreed drug buy location. As such, we find that the state failed to present sufficient evidence to support Byrd's conviction for the firearm specification attached solely to the drug trafficking offense.

{¶25} When viewing the evidence in a light most favorable to the prosecution, the testimony elicited at trial provided a reasonable trier of fact with all of the essential elements of each of the crimes for which Byrd was charged, with the exception of the one-year firearm specification attached to Byrd's drug trafficking charge.

{¶26} Byrd's first assignment of error is sustained, in part, and overruled, in part.

{¶27} When considering a manifest weight challenge, the court is concerned not with the burden of production, as with a sufficiency challenge, but rather the burden of persuasion.

When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Jackson*, 8th Dist. No. 86542, 2006-Ohio-1938, ¶ 29.

{¶28} The weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶29} In challenging his convictions as against the manifest weight of the evidence, Byrd argues that the testimony of Erica Gates cannot be trustworthy because she accepted a plea to reduced charges stemming from the present incident in exchange for her testimony against him. We note that these facts, along with Gates' prior felony conviction for fraud were examined by Byrd's attorney during the trial. Furthermore, while Gates' testimony regarding Byrd's exclusive use of the kitchen cabinet wherein the 73 grams of crack cocaine were found

and his ownership of the drugs was an important part of the evidence against Byrd, it was far from the only evidence. Byrd engaged in the phone call wherein he offered to sell crack cocaine to Detective Klomfas. The same phone used in the call was recovered from Byrd at the time of his arrest. Byrd admitted to the presence of a firearm at the residence. The handgun described by Byrd was discovered in the same cabinet as the jar of crack cocaine. A search of Byrd's room at the residence uncovered a bag of crack cocaine and white powder substance commonly used for diluting drugs as well as ammunition for a .380-caliber weapon.

{¶30} After reviewing the entire record, weighing all of the evidence and considering the credibility of witnesses, we find that this was not the exceptional case where the "jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 81. Byrd's second assignment of error is overruled.

{¶31} Byrd asserts that the trial court failed to properly advise him of postrelease control and argues that pursuant to *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, the trial court was required to separately inform him of the postrelease control requirements for each of the three counts for which he was convicted.

{¶32} We have previously rejected this precise argument and held that *Saxon* does not address the imposition of multiple periods of postrelease control. *State v. Orr*, 8th Dist. No.

96377, 2011-Ohio-6269, ¶ 46-50; *State v. Morris*, 8th Dist. No. 97215, 2012-Ohio-2498, ¶ 16-18.

{¶33} In *Orr* and *Morris,* we explained that R.C. 2967.28(F)(4)(c) precludes the court or the parole board from imposing more than one period of postrelease control in cases that involve multiple convictions.[4]  Accordingly, the trial court's imposition of a five-year term of postrelease control in the present case was proper.

{¶34} Byrd's third assignment of error is overruled.

{¶35} Judgment affirmed in part and reversed in part.  Case remanded with instructions to the trial court to vacate the conviction on the one-year firearm specification attached to Byrd's drug trafficking conviction.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

[4]Byrd's argument that the case sub judice is distinguishable from *Orr* and *Morris* by reason of the trial court's resolution at the time of sentencing of two other cases, CR-548634 and CR-553439, is beyond the scope of the present appeal, which concerns solely Byrd's convictions in CR-548242.  Byrd does not dispute that the trial court imposed five years of postrelease control in the present case or that such a period was inappropriate under the law.

EILEEN A. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR