DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, following a jury verdict, in which appellant, Anthony C. Rodgers, was found guilty of one count of aggravated robbery with a firearm specification, in violation of R.C. 2911.01(A)(1) and R.C. 2941.145, and two additional counts of robbery in violation of R.C. 2911.02(A)(1) and (A)(2). For the reasons that follow, we hereby affirm the judgment of the trial court.
 {¶ 2} On appeal, appellant sets forth the following two assignments of error:
 {¶ 3} "Assignment of Error No. 1: Mr. Rodgers received ineffective assistance of counsel, in violation of his rights under the Constitution of the United States and the Ohio Constitution when his trial attorney (1) failed to make any effort to learn about what occurred and what evidence was adduced at his trial in federal court despite knowing that evidence from that trial would be admitted into the trial in this case * * *; [and] (2) promised the jury, during opening statement, that they would hear from an alibi witness, William Johnson, and then neither called Mr. Johnson to the witness stand nor attempted to explain to the jury why he did not * * *.
 {¶ 4} "Assignment of Error No. 2: A trial court commits reversible error when it permits jurors to ask questions of witnesses."
 {¶ 5} On December 6, 2000, appellant was indicted by the Lucas County Grand Jury on one count of aggravated robbery with a firearm specification, and two additional counts of robbery. The charges arose from an incident occurring on the morning of April 9, 1999, at the Sun Federal Credit Union in Oregon, Ohio, in which several men entered the building wearing masks and gloves, and brandishing firearms. After robbing the credit union, the men left in one vehicle, after which they switched to another vehicle. Appellant was arrested after a witness gave police the license plate number of the second vehicle, which was registered in appellant's name.
 {¶ 6} The trial court found appellant to be indigent and appointed attorney Myron Duhart to represent appellant at trial. Appellant received a jury trial in July, 2001; however, that trial resulted in a hung jury, after which a mistrial was declared on July 13, 2001. On July 16, 2001, appellant was released from custody on his own recognizance pending a re-trial.
 {¶ 7} On July 31, 2001, several men wearing masks and gloves, and brandishing firearms, entered Fifth Third Bank in Maumee, Ohio. After robbing the bank, the men left in one car and later switched to another car. They were eventually apprehended, along with money that was taken from Fifth Third Bank during the robbery. Appellant, who was identified as one of the Fifth Third Bank robbers, was arrested, tried, and convicted in federal court. On August 16, 2001, the state of Ohio filed a motion in the trial court for permission to use evidence from appellant's trial in federal court in his re-trial in state court, which was granted by the trial court on November 9, 2001.
 {¶ 8} On February 25, 2002, a second jury trial was begun in the trial court on charges stemming from the Sun Federal Credit Union robbery. On February 27, 2002, the jury found appellant guilty of all three counts as originally charged in the indictment. A timely notice of appeal was filed.
 {¶ 9} Appellant asserts in his first assignment of error that he received ineffective assistance of appointed trial counsel on re-trial.
 {¶ 10} Generally, in order to prove ineffective assistance of counsel, a defendant must show: 1) that defense counsel's representation fell below an objective standard of reasonableness; and 2) that counsel's deficient representation was prejudicial to the defendant's case. State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph two of the syllabus. See, also, Strickland v. Washington (1984), 466 U.S. 668, 694. In making this evaluation, counsel's actions which "might be considered sound trial strategy," are to be presumed effective.Strickland, supra, at 689.
 {¶ 11} In support of his first assignment of error, appellant first argues that his trial counsel's performance was deficient, because counsel failed to ascertain exactly what evidence was used to convict appellant in his trial in federal court. Specifically, appellant asserts that trial counsel failed to attend the federal court proceedings, or otherwise investigate the potential testimony of witnesses who testified against appellant in that case.
 {¶ 12} The duty of counsel to conduct a reasonable investigation is set forth in Strickland, supra, as follows:
 {¶ 13} "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. at 690-691.
 {¶ 14} In addition, when reviewing trial counsel's investigation in a particular case, an appellate court must recognize that [counsel's] choice of trial strategy may dictate the scope of the investigation." State v. Larson (Nov. 9, 1993), 8th Dist. No. 63001, citing Strickland, supra, at 695.
 {¶ 15} As set forth above, all parties were aware in November 2001 that evidence from appellant's federal court trial would be used in his re-trial in state court. Nevertheless, during appellant's re-trial, defense counsel argued that Charla Bracken, a Fifth Third Bank employee who testified in the federal trial, should not be allowed to testify against appellant. In support of his argument, counsel stated that he had insufficient time to review Bracken's prior testimony.
 {¶ 16} The trial court overruled defense counsel's objection; however, a limiting instruction was given that evidence from the federal trial was to be considered by the jury only "for the limited purpose of establishing identity, plan or scheme in this trial." Bracken then testified that that appellant was one of the men who was tried for robbing Fifth Third Bank. However, on cross-examination, she stated that the men who robbed Fifth Third Bank wore masks, and she could not say for certain that appellant was one of those masked individuals.
 {¶ 17} On consideration of the foregoing, we conclude that appellant's broad, conclusory statements are insufficient to demonstrate that he received ineffective assistance of trial counsel. Specifically, appellant has not identified what prejudicial effect, if any, directly resulted from defense counsel's allegedly deficient performance. Accordingly, appellant's first argument is without merit.
 {¶ 18} Appellant next asserts that he received ineffective assistance of trial counsel because counsel did not call a prospective witness, William Johnson, to testify. In support thereof, appellant argues that he was prejudiced because defense counsel told the jury in his opening statement that Johnson would provide appellant with an alibi.
 {¶ 19} As set forth above, actions of defense counsel which "might be considered sound trial strategy," are to be presumed effective. Strickland, supra, at 687. Ohio courts have generally held that, "counsel's decisions regarding which witnesses to call fall within the realm of trial strategy and will not constitute ineffective assistance of counsel." State v.Gaston (Dec. 17, 2001), 7th App. No. 98-BA-52, cert. denied,537 U.S. 1021, citing State v. Clayton (1980),62 Ohio St.2d 45, 49.
 {¶ 20} The record shows that, in his opening statement, defense counsel told the jury that it would hear the testimony of two alibi witnesses. Counsel stated that Angela Jones, appellant's girlfriend, and William Johnson, Jones' uncle, would establish that appellant was with Jones from the evening of April 8, 1999 until the morning of April 9, 1999.
 {¶ 21} On direct examination, Jones testified that appellant came to her home on April 8, 1999, sometime after her husband left for work at 10:30 p.m. Jones further testified that appellant did not leave her home until sometime between 9:00 a.m. and 11:00 a.m. on the morning of April 9, 1999. She stated that appellant had to have been with her until at least 9:00 a.m., because the Jenny Jones program was on television when they woke up that morning. She stated that appellant had to have left by at least 11:00 a.m., because that is the time her husband returned home from work.
 {¶ 22} On cross-examination, Jones admitted that she did not know exactly which program was on television when she and appellant woke up on April 9. Jones indicated during cross-examination that she was tired of being asked to testify in court on appellant's behalf, and she wanted to complete her testimony so she could go home and care for her child.
 {¶ 23} Appellant has not alleged any specific prejudice resulting from Johnson's failure to testify; he merely speculates that such an omission somehow irritated the jury or caused defense counsel to lose credibility. However, given the nature of Jones' testimony, we cannot say that defense counsel's decision not to have Johnson attempt to further corroborate appellant's alibi was anything other than sound trial strategy. Appellant's second argument is without merit.
 {¶ 24} This court has considered the entire record of proceedings that was before the trial court and, upon consideration thereof and the law, finds that appellant has not demonstrated that he received ineffective assistance of trial counsel in this case. Appellant's first assignment of error is not well-taken.
 {¶ 25} Appellant asserts in his second assignment of error that the trial court erred as a matter of law when it encouraged jurors to ask questions of witnesses at various points throughout the trial. In support thereof, appellant relies on State v.Gilden (2001), 144 Ohio App.3d 69, in support of his argument that juror questions should be universally condemned because it "can undermine the attorney's strategy or theory of the case" and it violates the accused's constitutional right to due process of law.
 {¶ 26} In State v. Fisher (2002), 99 Ohio St.3d 127,2003-Ohio-2761, the Supreme Court of Ohio held that:
 {¶ 27} "the practice of allowing jurors to question witnesses is a matter committed to the discretion of the trial court. To minimize the danger of prejudice, however, trial courts that permit juror questioning should (1) require jurors to submit their questions to the court in writing, (2) ensure that jurors do not display or discuss a questions with other jurors until the court reads the questions to the witness, (3) provide counsel an opportunity to object to each question at side bar or outside the presence of the jury, * * * (4) instruct jurors that they should not draw adverse inferences from the court's refusal to allow certain questions, and (5) allow counsel to ask followup questions of the witnesses." Id. at 135, ¶ 29.
 {¶ 28} In this case, before testimony began, the trial court explained the process of jury questioning to the jury members as follows:
 {¶ 29} "The procedure for asking questions of a witness is as follows: You will write your questions on a piece of paper. Do not sign the questions. Do not put your jury seat number or in any way identify yourself. Fold it over once, and I mean just once * * *. And then pass them down to the end of the row. If you do not have a question, I want you to write no question or something similar on it so that all jurors are turning in a piece of paper at the same time.
 {¶ 30} "* * *
 {¶ 31} "The questions will be picked up by Pam. They will be brought to the bench, examined by the Court and counsel for both parties at the bench. If a question is permissible under the Ohio Rules of Evidence, it will be read by the Court to the witness. I may rephrase it in order that it meets the Ohio Rules of Evidence, it will be read by the Court to the witness. I may rephrase it in order that it meets the Ohio Rules of Evidence in that case.
 {¶ 32} "Now, if you've asked a question and it's not read to the witness, please do not be offended. As I just indicated to you, all evidence that comes before you must be in accordance with the Ohio Rules of Evidence, and if a question cannot be rephrased to make it admissible, and I recognize you're not schooled in the law or the rules of evidence, please understand the question will not be asked and no explanation will be given other than it's not appropriate under the rules of evidence.
 {¶ 33} "If a question is asked and I don't read it, now please do not speculate on what the answer to such questions might be or why the court did not ask that particular question. All I can tell you is it's not otherwise admissible and won't be asked.
 {¶ 34} "Do not be upset with the attorneys if you ask a question of a witness and I don't read it to the witness. As I said, it's for the Court and this Court alone to determine what is and what is not admissible evidence, and I'll make that decision. The attorneys have no part in that, so please don't be offended if you ask a question that I don't read to them. It's not the attorney's fault.
 {¶ 35} "In the course of asking questions, I caution you not to become advocates for either side. Questions are to be used for the purpose of clarifying a witness's testimony.
 {¶ 36} "Now, if a juror's question is asked of the witness, then the attorneys for either side will be given an opportunity to ask follow-up questions to any response the witness has given to a question asked by you." Id. at ¶ 64.
 {¶ 37} In State v. Kirkwood, 6th Dist. No. L-00-1380, 2003-Ohio-6757, this court considered instructions that were virtually identical to those used in this case. We concluded that, absent any specific allegations of prejudice, those instructions were legally sufficient pursuant to Fisher, supra. Id. at ¶ 64.
 {¶ 38} Upon consideration of the relevant portions of the record in this case and the law, this court finds that the trial court did not abuse its discretion or otherwise prejudice appellant's right to a fair trial by allowing jurors to question witnesses during the trial pursuant to the instructions set forth above. Appellant's second assignment of error is not well-taken.
 {¶ 39} The judgment of the Lucas County Court of Common Pleas is hereby affirmed. Court costs of these proceedings are assessed to appellant.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Knepper, J., Lanzinger, J., Singer, J., concur.