[Cite as *State v. Scruggs*, 2019-Ohio-3043.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                               :

     Plaintiff-Appellee,              :

                        No. 107860

     v.                                        :

GREGORY SCRUGGS, JR.,                        :

     Defendant-Appellant.             :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 25, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-628628-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Christine M. Vacha, Assistant Prosecuting Attorney, *for appellee.*

Edward M. Heindel, *for appellant.*

MARY EILEEN KILBANE, A.J.:

{¶ 1} Defendant-appellant, Gregory Scruggs, Jr. ("Scruggs"), appeals his convictions for rape and sexual battery. For the reasons set forth below, we affirm.

{¶ 2} In January 2018, Scruggs was charged with four counts of rape, three counts of kidnapping, and one count attempted rape.[1]  The charges arose from separate incidents, involving three victims, and each was alleged to have occurred, approximately a year apart, between June 2015 and July 2017.

{¶ 3} In September 2018, the trial court granted Scruggs's motion to sever the counts pertaining to each victim.   In the same month, a jury trial commenced on one count each of rape and kidnapping pertaining to victim T.M.

{¶ 4} At trial, 25-year-old T.M. testified that on July 23, 2017, she spent time with her best friend, Jamica, and her cousin, Van.  They drove around, drank alcohol, and smoked marijuana.  T.M. stated they bought a fifth of Hennessy and started drinking around noon.  The three shared the alcohol as they drove around.

{¶ 5} T.M. testified that around 6:00 p.m., they stopped to visit her sister T.M.II.  While visiting her sister, T.M. exchanged text messages with a man named Maurice Bryant ("Bryant"), whom she had met several weeks earlier.   Bryant indicated he would pick her up from her sister's house, so they could spend time together.

{¶ 6} Bryant arrived at T.M.II's house around 7:00 p.m. Bryant was accompanied by another man, who was later identified as Scruggs.  T.M. and Jamica entered Bryant's car and the four began driving around.  Bryant and Scruggs were drinking alcohol and offered the women a drink, but they declined.  T.M. testified

---

[1] Each rape count and the attempted rape count contained a sexually violent predator specification.  The kidnapping counts contained both sexual motivation and sexually violent predator specifications.

she declined because she was already drunk, had been drinking dark liquor all day and Bryant and Scruggs were drinking light liquor.

{¶ 7} T.M. testified that after driving around for a while, and after Bryant made stops at several houses, they went to Scruggs's house. Once there, the four sat around watching television. At some point, T.M. left with Bryant to go to the liquor store. When they returned to Scruggs's house, they continued to watch television. T.M. testified that while they were watching television, she fell asleep on the couch next to Bryant and Jamica, who were already asleep.

{¶ 8} T.M. testified that at some point during the middle of the night, she awoke because she felt as if she was falling off the couch. T.M. stated the living room was dark, the television had been turned off, her shorts and underwear were pulled down, and she felt someone inserting his penis into her vagina. T.M. stated she pushed him off, pulled up her shorts, and went back to sleep because she still felt drunk. T.M. testified that she was awakened a second time when someone inserted his penis into her vagina. T.M. stated she again pushed him off her and pulled up her shorts. T.M. stated that as she was trying to become fully awake, she observed Bryant coming through the front door. T.M. told Bryant she was ready to leave and he took her home.

{¶ 9} T.M. testified that she called T.M.II early the next morning and described what occurred and later went to the hospital where a rape kit was completed and where she indicated Bryant was the perpetrator. When T.M. reported the incidents to the police, she also indicated Bryant was the assailant.

{¶ 10} T.M. testified that she subsequently sent Bryant a text stating, "[i]f you wanted to have sex then you could have just asked me. And then I told him to lose my number, and he said he already did." T.M. testified that at the time she sent the text, she thought it was Bryant who had sexually assaulted her so she was surprised when the rape-kit results indicated it was Scruggs who had committed the sexual assault.

{¶ 11} T.M.'s older sister, T.M.II, testified that on July 23, 2017, T.M. and Jamica visited with her for a few hours. T.M.II stated her sister was drunk when she arrived, but that she continued drinking. T.M.II testified that Jamica was also drunk and fell asleep on the couch. T.M.II stated that someone in a dark-colored vehicle picked up her sister and Jamica. T.M.II testified that because she did not know the individual who picked up T.M., she communicated with her sister via text throughout the rest of the evening. T.M.II stated that the following morning, her sister contacted her and informed her of the sexual assault.

{¶ 12} Scruggs testified on his own behalf. Scruggs testified he and Bryant picked up T.M. and her friend between 6:30 and 7:00 p.m. on July 23, 2017. Scruggs stated that he and Bryant were drinking, offered the women a drink, but T.M. refused and informed them she would not drink light liquor because she had been drinking dark liquor. Scruggs stated they drove around for about an hour and then went to the house where he lived with his grandmother.

{¶ 13} Scruggs testified that while at his grandmother's house, they sat around watching a show called "Power," while T.M.'s friend slept on the couch.

Scruggs stated T.M. left with Bryant and they returned about 45 minutes later. Scruggs stated that a short time later, Bryant left again.

{¶ 14} Scruggs testified that after Bryant left, he and T.M. began talking and flirting with each other. Scruggs stated that he and T.M. went into a room adjacent to the living room where they had consensual sex. Scruggs stated that T.M. asked if he had any money and he told her that he did. Scruggs stated they had sex in two different rooms. Scruggs testified that after they had sex, T.M. asked him not to tell Bryant and he told her he would not. After Bryant returned, he and Scruggs dropped T.M. and Jamica home.

{¶ 15} The jury found Scruggs guilty of rape, but not guilty of kidnapping. Thereafter, Scruggs pled guilty to two counts of sexual battery relating to victims D.A. and E.W. The trial court sentenced Scruggs to five years in prison for rape and to two years each for the sexual battery charges. The trial court ordered concurrent sentences for a total prison term of five years.

{¶ 16} Scruggs now appeals, assigning the following four errors for review:

### Assignment of Error One

The conviction for rape was against the manifest weight of the evidence.

### Assignment of Error Two

The conviction for rape was not supported by sufficient evidence.

### Assignment of Error Three

Scruggs was denied his right to the effective assistance of counsel, when counsel failed to subpoena and call witnesses to testify on Scruggs' behalf.

Assignment of Error Four

The trial court erred when it did not have a full plea colloquy with Scruggs pausing to further explain the important rights he was waiving by pleading guilty to sexual battery.

## Sufficiency of the Evidence

{¶ 17} For ease of discussion, we will begin with the second assignment of error, wherein Scruggs argues that his conviction for rape was not supported by sufficient evidence.

{¶ 18} Sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Williams*, 8th Dist. Cuyahoga No. 106563, 2018-Ohio-4612, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court examines the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *Id.* The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 19} The jury found Scruggs guilty of rape in violation of R.C. 2907.02(A)(1)(c). This statute provides in pertinent part that "[n]o person shall engage in sexual conduct with another" when "the other person's ability to resist or consent is substantially impaired because of a mental or physical condition," and

"the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition."

{¶ 20} Scruggs does not deny that sexual conduct occurred. Rather, he argues that the state failed to offer sufficient evidence either that T.M. was substantially impaired or that he knew, or had reasonable cause to believe, that she was substantially impaired and not able to consent.  As a result, we need only address the element of substantial impairment.

{¶ 21} In *State v. McCall*, 8th Dist. Cuyahoga No. 104479, 2017-Ohio-296, we stated:

> As for the element of substantial impairment, this court has repeatedly held that "sleep constitutes a mental or physical condition that substantially impairs a person from resisting or consenting to sexual conduct." *State v. Jones*, 8th Dist. Cuyahoga No. 98151, 2012-Ohio-5737, ¶ 30, citing *State v. Clark*, 8th Dist. Cuyahoga No. 90148, 2008-Ohio-3358, ¶ 21.

*Id.* at ¶ 7.

{¶ 22} In the instant case, T.M. testified that she was twice awakened when someone, whom she thought was Bryant, but actually was Scruggs, had inserted his penis into her vagina.  T.M. read the last text message she sent to Bryant, which stated: "That's crazy as f**k.  If you wanted to f**k, you could've told me.  You ain't have to do it while I was asleep but it's cool."

{¶ 23} The above excerpt reveals that T.M. was substantially impaired by sleep at the time of the incidents such that she was unable to resist or consent to Scruggs's sexual conduct.

{¶ 24} In addition, T.M. testified that she had been drinking for several hours prior to being picked up by Bryant and was already drunk. T.M.II testified that T.M. was drunk when she arrived at her house, but continued to drink. T.M.II also testified that T.M.'s friend and drinking companion, Jamica, was so inebriated that she slept most of time she was at T.M.II's house. The testimony also established that Jamica was asleep most of the time spent at Scruggs's house.

{¶ 25} The consumption of a large amount of alcohol over the course of just a few hours is sufficient evidence to find that the victim was substantially impaired. *State v. Patterson*, 8th Dist. Cuyahoga No. 104266, 2017-Ohio-1444, citing *State v. Kuck*, 2016-Ohio-8512, 79 N.E.3d 1164, ¶ 95 (2d Dist.).

{¶ 26} Based on the foregoing, and the physical evidence linked to Scruggs, we conclude there was sufficient evidence presented which, if believed, would convince the average trier of fact that Scruggs was guilty beyond a reasonable doubt of rape.

{¶ 27} Accordingly, the second assignment of error is overruled.

### Manifest Weight of Evidence

{¶ 28} In the first assignment of error, Scruggs argues his rape conviction is against the manifest weight of the evidence.

**{¶ 29}** A manifest weight challenge questions whether the prosecution met its burden of persuasion. *State v. Tate*, 8th Dist. Cuyahoga No. 97804, 2014-Ohio-5269, *rev'd on other grounds*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888, citing *State v. Byrd*, 8th Dist. Cuyahoga No. 98037, 2012-Ohio-5728, ¶ 27. When considering a manifest weight challenge, a reviewing court reviews the entire record, weighs the evidence and all reasonable inferences therefrom, considers the credibility of the witnesses and determines whether the finder of fact clearly lost its way. *Id.*, citing *State v. Jackson*, 8th Dist. Cuyahoga No. 86542, 2006-Ohio-1938, ¶ 29. A reviewing court may reverse the judgment of conviction if it appears that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.*

**{¶ 30}** We note that in considering a manifest weight challenge, the trier of fact is in the best position to take into account inconsistencies, along with the witnesses's manner, demeanor, gestures, and voice inflections, in determining whether the proffered testimony is credible. *State v. Frost*, 8th Dist. Cuyahoga No. 106964, 2019-Ohio-93, ¶ 28, citing *State v. Becker*, 8th Dist. Cuyahoga No. 100524, 2014-Ohio-4565, ¶ 37, citing *State v. Kurtz*, 8th Dist. Cuyahoga No. 99103, 2013-Ohio-2999, ¶ 26. Therefore, we afford great deference to the factfinder's determination of witness credibility. *State v. High*, 8th Dist. Cuyahoga No. 106198, 2018-Ohio-2236, citing *State v. Ball*, 8th Dist. Cuyahoga No. 99990, 2014-Ohio-1060.

{¶ 31} As previously discussed, Scruggs does not dispute that he engaged in sexual conduct with T.M.; rather, he argues that the jury's conclusion that it was without T.M.'s consent is against the manifest weight of the evidence.

{¶ 32} Notwithstanding Scruggs's arguments, based on the specific facts and circumstances of this case, we conclude that the jury's conclusion that the sexual conduct was not consensual is not against the manifest weight of the evidence. Ultimately, this case turned on whether the jury believed T.M.'s or Scruggs's version of events. The jury was in the best position to view T.M. and Scruggs, to observe their demeanor, gestures, voice inflections, and then conclude who was more credible.

{¶ 33} As a result, the jury was free to accept or reject any or all of the parties' testimony, but decided to accept T.M's testimony that she did not and was not able to consent to sexual conduct with Scruggs because she was asleep and drunk. In light of the foregoing, when considering T.M.'s credibility and resolving conflicts in the evidence, we do not find that the jury clearly lost its way in convicting Scruggs.

{¶ 34} Accordingly, the first assignment of error is overruled.

<u>Ineffective Assistance of Counsel</u>

{¶ 35} In the third assignment of error, Scruggs argues he was denied the effective assistance of counsel because of counsel's failure to subpoena and call various witnesses to testify on his behalf.

{¶ 36} For a defendant to establish a claim for ineffective assistance of counsel, he or she must demonstrate that trial counsel's performance was deficient

and that the deficient performance prejudiced his or her defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). To establish prejudice, the defendant must demonstrate there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694.

{¶ 37} In evaluating a claim of ineffective assistance of counsel, a court must give great deference to counsel's performance. *Id.* at 689. "A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *State v. Pawlak*, 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175, ¶ 69. Thus, "[t]rial strategy or tactical decisions cannot form the basis for a claim of ineffective counsel." *State v. Logan*, 8th Dist. Cuyahoga No. 106868, 2018-Ohio-5350, citing *State v. Foster*, 8th Dist. Cuyahoga No. 93391, 2010-Ohio-3186, ¶ 23, citing *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

{¶ 38} Scruggs argues defense counsel was ineffective for failing to call Bryant as a witness, who could have testified that T.M. was coherent, was able to carry on a full conversation, and most importantly was able to consent to sexual intercourse. Scruggs also argues that defense counsel was ineffective for failing to call Jamica as a witness, who could have testified whether T.M. was looking for a sexual relationship when she contacted Bryant and could also testify whether T.M. was in a position to consent.

{¶ 39} Generally, an attorney's determination of which witnesses to call falls within the realm of trial strategy and will not be second-guessed on appeal. *State v. White*, 8th Dist. Cuyahoga No. 101576, 2017-Ohio-7169, citing *State v. Treesh*, 90 Ohio St.3d 460, 490, 2001-Ohio-4, 739 N.E.2d 749; *State v. Vargas*, 8th Dist. Cuyahoga No. 97376, 2012-Ohio-2767, ¶ 14. Thus, the mere failure to call witnesses does not render counsel's assistance ineffective absent a showing of prejudice.

{¶ 40} Here, defense counsel's decision not to call Bryant and Jamica as witnesses falls within the realm of trial strategy. We also find there is no showing of prejudice by defense counsel's decision. Scruggs's own testimony established that Bryant was not present when the sexual conduct occurred. Further, by Scruggs's own testimony, Jamica was asleep when the sexual conduct occurred.

{¶ 41} As a result, Scruggs was not prejudiced and therefore, his claim of ineffective assistance of counsel is unpersuasive.

{¶ 42} Accordingly, the third assignment of error is overruled.

## Guilty Plea

{¶ 43} In the fourth assignment of error, Scruggs argues the trial court erred when it failed to have a full plea colloquy on the sexual battery charges. We find no merit to this assertion.

{¶ 44} Crim.R. 11(C)(2)(a) provides in pertinent part that "the court shall not accept a plea of guilty or no contest without first addressing the defendant personally and * * * [d]etermining that the defendant is making the plea voluntarily,

with understanding of the nature of the charges and of the maximum penalty involved[.]"

{¶ 45} The requirements of Crim.R. 11(C)(2)(a) are nonconstitutional, and thus, this court reviews "to ensure substantial compliance" with this rule. *State v. Maddox*, 8th Dist. Cuyahoga Nos. 106505 and 106506, 2018-Ohio-3056, citing *State v. Esner*, 8th Dist. Cuyahoga No. 90740, 2008-Ohio-6654. "Under this standard, a slight deviation from the text of the rule is permissible; so long as the totality of the circumstances indicates that 'the defendant subjectively understands the implications of his plea and the rights he is waiving.'" *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 31, quoting *State v. Nero*, 56 Ohio St.3d 106, 564 N.E.2d 474 (1990).

{¶ 46} Scruggs does not contend that the trial court failed to engage in a proper Crim.R. 11 colloquy. Instead, Scruggs claims the trial court should have been more detailed.

{¶ 47} In the instant case, prior to accepting Scruggs's pleas, the trial court asked if he was threatened or coerced and his response was no; asked if he was promised anything to enter the pleas and his response was no; asked if he understood the allegations and his response was yes; and when asked if he understood a plea of guilt is a complete admission, his response was yes.

{¶ 48} In addition, the trial court carefully reviewed the offense to which Scruggs would be pleading guilty, identifying the potential sentence he could receive. Scruggs confirmed that he understood. The trial court specifically asked

if Scruggs understood that the pleas could not be accepted if he did not understand that he would be waiving important constitutional rights. The trial court then proceeded to review all the constitutional rights that Scruggs would be waiving by entering the pleas. In each instance, Scruggs indicated he understood.

{¶ 49} Following a thorough review of the record, we find that, under the totality of the circumstances, Scruggs subjectively understood the consequences and implications of his guilty pleas. As a result, his guilty pleas were knowingly, intelligently, and voluntarily made and the trial court did not err in accepting his guilty pleas.

{¶ 50} Accordingly, the fourth assignment of error is overruled.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

FRANK D. CELEBREZZE, JR., J., and
EILEEN A. GALLAGHER, J., CONCUR