[Cite as *State v. Davis*, 2023-Ohio-487.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                          Court of Appeals No.  L-22-1028

      Appellee                                      Trial Court No.  CR0202001261

v.

Robert Davis                                          **DECISION AND JUDGMENT**

      Appellant                                     Decided:  February 17, 2023

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Brad F. Hubbell, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} Appellant Robert Davis appeals the January 13, 2022 judgment of the Lucas

County Court of Common Pleas sentencing him to life without parole for an aggravated

murder conviction, with additional prison sentences of 11 years for the burglary

conviction, 11 years for the kidnapping conviction and 36 months for the tampering conviction, all to be served consecutively.

{¶ 2} For the following reasons, we affirm the judgment of the trial court.

{¶ 3} Appellant raises two assignments of error for our review. His first assignment of error, presented in his brief as an "Issue Presented for Review" asks "Did Mr. Davis receive ineffective assistance of counsel when his attorney failed to secure a witness, central to defendant's defense, for trial?"

### *Procedural History*

{¶ 4} On February 12, 2020, the Lucas County grand jury issued an indictment charging Robert Davis with aggravated murder in violation of R.C. 2903.01(B) and (F) (Count 1); murder in violation of R.C. 2903.02(8) and 2929.02 (Count 2); felonious assault in violation of R.C. 2903.11(A)(1) and (D) (Count 3); aggravated robbery in violation of R.C. 2911.01(A)(3) and (C) (Count 4); aggravated burglary in violation of R.C. 2911.11(A)(1) and (B) (Count 5); kidnapping in violation of R.C. 2905.01(A)(2) and (C) (Count 6); and tampering with evidence in violation of R.C. 2921.12(A)(1) and (B) (Count 7). The first six counts carried a repeat violent offender specification pursuant to R.C. 2941.149.

{¶ 5} A jury found Davis guilty of all the charges. The record reflects that at the conclusion of the trial and before sentencing, the violent offender specifications were dismissed by the prosecution.

2.

## Facts

{¶ 6} On March 6, 2019, victim's wife was on her way home and texted her husband, victim, asking him to help her unload her photography equipment from her car when she arrived home. Victim didn't respond before she arrived at the house at about 5:00 p.m., and she thought he might have fallen asleep.

{¶ 7} Victim's wife was bringing her equipment into the house from her car when she noticed an empty shelf where the couple normally kept DVD's. She went upstairs and saw the doors to a linen closet had been left open. She looked into the bedroom, where she saw victim's legs were sticking out from beside the bed next to the window. She ran to him and saw that he was nude, lying on his back, with his arms bound together and his ankles bound together. Green cloth cords were wrapped around his neck, and his face was purple.

{¶ 8} Victim's wife called 911 at 5:12:53 p.m. As she spoke to the 911 operator, she used fingernail clippers to cut material wrapped around victim's neck. Victim's hands were tied in front of his chest and she had to untie them in order to attempt a few repetitions of CPR.

{¶ 9} When victim's wife let in the first officer responding to the call, she realized that the front door to the house wasn't locked. A laptop, some DVD's, costume jewelry, a DVD player, a small boom box, cufflinks, and a watch were missing. The DVD's had the couple's last name written on the boxes. Victim's wife

3.

didn't notice that her husband's wedding ring was missing, but later police showed her a photo of a ring which she identified as belonging to her husband. She confirmed that the open drawers in the bedroom and scattered contents were not the way she'd left the house.

*Analysis*

{¶ 10} In counsel's opening statement, he patently argues to the jury that an ex-girlfriend "framed" appellant and that Davis had nothing to do with these crimes.

{¶ 11} In his closing argument, defense counsel unambiguously focused on the person who did not appear at the trial. Specifically, the ex-girlfriend. With respect to the evidence provided by this person to the police, counsel encouraged the jurors to consider that she "gave those items to a new male acquaintance as he prepared to set off on a cross-country crime spree" although there was no evidence introduced whatsoever to even suggest that such an imagined theory could be based on facts.

{¶ 12} This ex-girlfriend was never called as a witness for either the prosecution or the defense.

{¶ 13} Appellant argues that his counsel was ineffective in failing to investigate, locate and compel his ex-girlfriend to testify at trial. He further argues that his sole defense was that the ex-girlfriend played a material role in the case and that without her testimony the jury could not find for the state.

4.

**{¶ 14}** To establish his claim for ineffective assistance of counsel, Davis must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceedings result would have been different. *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 200, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus.

**{¶ 15}** A reviewing court must determine whether trial counsel's assistance fell below an objective standard of reasonable advocacy. *Bradley* at 141-142. Moreover, the deficient performance must have been so serious that, "were it not for counsel's errors, the result of the trial would have been different." *Id.* at 141-142.

**{¶ 16}** Trial strategy must be accorded deference and cannot be examined through the distorting effect of hindsight. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 115. An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland* at 691.

**{¶ 17}** Because "effective assistance" may involve different approaches or strategies, our scrutiny of trial counsel's performance must be highly deferential with a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Alliman*, 6th Dist. Ottawa No. OT-21-024, 2023-Ohio-

5.

206, ¶ 35-38, citing *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), quoting *Strickland* at 689.

{¶ 18} In *State v. Rodgers,* 6th Dist. Lucas No. L-02-1089, 2004-Ohio-3795, ¶ 19, this court noted that Ohio courts have generally held that counsel's decisions regarding which witnesses to call fall within the realm of trial strategy and will not constitute ineffective assistance of counsel.

{¶ 19} Davis claims that since his trial counsel argued to the jury that his ex-girlfriend was somehow materially involved and maybe even responsible for the murder, he was ineffective in failing to investigate, locate and compelling her testimony.

{¶ 20} The record establishes that the ex-girlfriend contacted police in Cheyenne, Wyoming and identified Davis as the murderer. When further interviewed by authorities in Wyoming as well as Toledo police, she provided information corroborating the murder. She also supplied the police with her laptop which contained some of the victim's identification information. She further indicated to Toledo police that she feared Davis.

{¶ 21} Neither the prosecution nor defense called this ex-girlfriend as a witness. The decision of counsel to call or not to call a particular witness is largely a matter of professional judgment which experienced advocates could endlessly debate, and the fact that there was a witness that could have offered testimony beneficial to the defense is not in itself proof of counsel's ineffectiveness, absent a showing of prejudice. *State v.*

6.

*Scruggs*, 8th Dist. Cuyahoga No. 107860, 2019-Ohio-3043, ¶ 39. *See also Arnold v. State*, 2022 Ark. 191, 196, 653 S.W.3d 781 (2022), citing *Johnson v. State*, 325 Ark., 44, 49, 924 S.W.2d 236 (1996).

{¶ 22} Davis only hypothesizes about the ex-girlfriend's actions and what she would have testified to at trial. Speculation as to what an uncalled witness would have said at trial is not sufficient for a claim of ineffective assistance of counsel. *State v. Jones*, 12th Dist. Butler No. CA2004-06-144, 2005-Ohio-3887, ¶ 15.

{¶ 23} In this instance, it was this very witness that alerted police in Wyoming about appellant's involvement in the murder. She provided significant corroborating information that was incriminating to Davis.

{¶ 24} Appellant did not proffer any evidence that this witness was prepared to cooperate in his defense or provide any testimony that would have been of some benefit to his defense. Thus, there is no basis for Davis to conclude that the failure to investigate, locate and even call the ex-girlfriend to testify, prejudiced his defense.

{¶ 25} The record of the trial indicates that counsel's continued insistence on repeating the elaborate theoretical criminal scheme of the absent ex-girlfriend drew an objection from the prosecution. The prosecution was troubled how, even if ex-girlfiend were to appear at trial, counsel could "get her to admit to these criminal activities." When noted that there was no obstruction to the defense having subpoenaed this witness, the trial court also pointed out that he "can't have it both ways."

7.

{¶ 26} We must conclude that counsel's deliberate actions were a conscious trial strategy to somehow blame these offenses on the absent witness. In consideration of the totality of the evidence that was placed before the jury, we cannot conclude that counsel's efforts falls outside the wide range of reasonable professional assistance.

{¶ 27} Having found nothing in the record to support a conclusion that he was prejudiced by counsel's failure to investigate, locate or call the ex-girlfriend as a witness at trial, we find the appellant's first assignment of error not well-taken and denied.

{¶ 28} In his second assignment of error, Davis asks "Did the trial jury err when it found Mr. Davis guilty because the evidence was insufficient to support the finding and the finding was not sustained by the manifest weight of the evidence?"

{¶ 29} Davis presents no argument in support of either of these propositions other than to repeat his claims that the state presented no eyewitness, there was a lack of a confession and of fingerprints at the crime scene or in the U-Haul vehicle and lack of any communication between the victim and Davis. Essentially, appellant argues that all the evidence was circumstantial and therefore, insufficient to sustain a guilty verdict.

{¶ 30} Other than these broadsided statements, appellant offers nothing more specific with respect to the elements of the individual crimes for which he was convicted and the evidence presented. He cites to *State v. Tibbetts*, 92 Ohio St.3d 146, 161-63, 749 N.E.2d 226 (2001) in support of his argument in this assignment. In that case, the court upheld the double murder and aggravated robbery convictions of Tibbetts largely based

8.

upon circumstantial evidence. The court also found the arguments on sufficiency of the evidence and the verdict being against the manifest weight of the evidence to be not well-taken.

### *Sufficiency of the Evidence*

{¶ 31} In challenging the sufficiency of the evidence, appellant fails to address the elements required to sustain any of the convictions.

{¶ 32} Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). We examine the evidence in a light most favorable to the state and decide whether any rational trier of fact could have found that the state proved, beyond a reasonable doubt, all of the essential elements of the crime. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), *superseded by state constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997); *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 78.

{¶ 33} Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Thompkins* at 386. In determining whether a conviction is based on sufficient evidence, an appellate court does not assess whether the evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *See Jenks* at paragraph two of the syllabus; *Yarbrough* at ¶ 79.

9.

{¶ 34} All evidence admitted against the appellant at trial may be considered on a claim of insufficient evidence. *Yarbrough* at ¶ 80. Appellee could meet its burden at trial using circumstantial evidence. *State v. Duke*, 6th Dist. Wood No. WD-20-001, 2021-Ohio-1552, ¶ 26. While inferences cannot be built on inferences, several conclusions can be drawn from the same set of facts; and a series of facts and circumstances can be used as a basis for ultimate findings. *Id.*, quoting *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293 (1990).

{¶ 35} For the following reasons, we further disagree with appellant.

{¶ 36} Proof beyond a reasonable doubt is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs. R.C. 2901.05(E).

### *Murder, Aggravated Murder, Aggravated Robbery, Aggravated Burglary and Kidnapping*

{¶ 37} In order for the jury to find appellant guilty of murder and aggravated murder, appellee must prove beyond a reasonable doubt that on or about March 6, 2019, in Lucas County, Ohio, appellant caused the death of the victim as the proximate result of committing or attempting to commit an offense of violence that is a felony of the first or second degree, in this case the offenses of aggravated robbery, aggravated burglary and kidnapping.

{¶ 38} In order for the jury to find appellant guilty of felonious assault, in violation of R.C. 2903.11(A)(1), appellee must prove beyond a reasonable doubt that on

10.

or about March 6, 2019, in Lucas County, Ohio, appellant did knowingly cause serious physical harm to the victim.

{¶ 39} In order for the jury to find appellant guilty of aggravated robbery in violation of R.C. 2911.01(A)(3), appellee must prove beyond a reasonable doubt that on or about July 6, 2019, in Lucas County, Ohio, appellant in attempting or committing a theft offense, as defined in R.C. 2913.01, inflict, or attempt to inflict, serious physical harm on another.

{¶ 40} In order to prove aggravated robbery, appellee must also prove a "theft offense." A "theft offense" includes "theft," defined by R.C. 2913.02(A), as, "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: (1) Without the consent of the owner or person authorized to give consent; (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent; (3) By deception; (4) By threat; or (5) By intimidation.

{¶ 41} In order for the jury to find appellant guilty of aggravated burglary in violation of R.C. 2911.11(A)(1), appellee must prove beyond a reasonable doubt that on or about March 6, 2019, in Lucas County, Ohio, appellant by force, stealth, or deception, trespassed in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than his accomplice is present, with purpose to commit in the structure or in the separately secured or separately

11.

occupied portion of the structure any criminal offense, in this case, assault, by inflicting physical harm on another.

{¶ 42} In order for the jury to find appellant guilty of kidnapping in violation of R.C. 2905.01(A)(2), appellee must prove beyond a reasonable doubt that on or about March 6, 2019, in Lucas County, Ohio, appellant did by force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear.

{¶ 43} In order for the jury to find appellant guilty of tampering with evidence in violation of R.C. 2921.12(A)(1), appellee must prove beyond a reasonable doubt that on or about March 6, 2019, in Lucas County, Ohio, appellant did, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation.

{¶ 44} Upon our review, we find that the prosecution established the following facts.

### The Murder Scene

{¶ 45} On March 6, 2019, responding officers arrived at the scene of the murder by 5:15p.m. They found victim's body lying on the floor, completely nude, bound at the ankles with green t-shirt material and at the wrists by an electronic charger cord. Clumps of the green t-shirt material were near the body. Victim had

12.

ligature marks around his neck and was obviously deceased. Dresser drawers had been left open, with clothes thrown about the room.

{¶ 46} Victim's wife told officers that he had left for work at 6 a.m., returned at 7 a.m. because he forgot his wallet, and then left again. She left at noon but returned at 4:45 p.m.

{¶ 47} At about 4 or 4:30, a neighbor saw a "mom-van" bearing a U-Haul logo parked near victim's house. A man walked from the house to the van with a big blue duffel bag. He entered the front door of the house, which didn't appear to be locked. The man was a white male of average height and build, and the U-Haul was gone when police arrived.

{¶ 48} The coroner testified that Victim died of strangulation. Victim's hyoid bone was fractured, and there was an area of hemorrhage nearby, indicating that the fracture occurred while victim was still alive.

### *Report to Wyoming Authorities*

{¶ 49} On March 21, 2019, a person referred to as the ex-girlfriend of appellant reported to the Laramie County, Wyoming Sheriff that Davis was involved in a homicide in Toledo. She reported information about a U-Haul, consistent with the neighbor's report of seeing a U-Haul near victim's house. Ex-girlfriend and Davis had stayed in the same apartment in North Platte, Nebraska, and a search warrant of the unit was executed.

13.

### Search warrant of North Platte, Nebraska apartment

{¶ 50} A search of the rental unit in North Platte resulted in the recovery of several items from victim's home that victim wife identified. These items included an HP laptop, a cell phone, charging cord, jewelry and DVD's. Officers discovered two blue canvas bags that matched the description of the witness who saw the man walking to and from the van parked near the victim's house.

{¶ 51} The HP laptop's operating system had been reinstalled on March 7, 2019. A user account for Davis was set up on Skype after the reinstall. Numerous searches had been performed regarding a murder in Toledo, Ohio and a document in unallocated space on the hard drive referred to the victim's wife. The ex-girlfriend's own laptop had been restored to its factory settings. Victim's cell phone had also been wiped and restored to factory settings.

{¶ 52} Davis was discovered in the rental unit on March 15, 2019. He vacated the unit that day.

### U-Haul Rental

{¶ 53} Davis rented the U-Haul in Gillette, Wyoming on February 22, 2019, at 9:02 a.m. The van was rented for two days, with a beginning mileage of 2,878 miles. On March 15, 2019, the van was reported abandoned. It was recovered on March 18, 2019 at 2:52 at 1404 W. Rodeo Road, next door to the address of the rental unit that

14.

police searched.  When the van was recovered, its odometer showed 6,590 miles, over 3,000 miles more than when it was rented.

### *Pawnshop Transactions*

{¶ 54} Law Enforcement Automated Data Systems records showed that Davis pawned victim's wedding band on March 6, 2019 at 6:27 p.m. at the Cashland at 3247 W. Alexis Road, Toledo, Ohio.  The next day, on March 7, at 3:12 p.m., Davis pawned a camcorder at the Pawn King in Moline, Illinois.  On March 9, 2019, he sold 60 DVD's at AAA Ultimate Pawn in Lincoln, Nebraska. On March 11, 2019, at 11:02 a.m., he sold a DVD player with a carrying case and a charger in North Platte, Nebraska.  Davis' driver's license was used to make each sale.

### *DNA testing*

{¶ 55} DNA analysis of the swab of the end of the charging cord used to bind victim's wrist revealed a mixture of DNA.  The two major contributors had profiles consistent with victim and Davis, and the frequency of the occurrence of a profile identical to that of Davis was 1 in 10 million.  Swabs of the cloth around the victim's neck revealed a similar mixture, with a frequency of 1 in 10,000.

### **Toledo Police Interview**

{¶ 56} When Toledo Police detectives spoke with Davis on April 2, 2019, he admitted he had been in Toledo.

15.

{¶ 57} In a sufficiency analysis, an appellate court does not assess whether the evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *See Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus; *Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, at ¶ 79 (noting that courts do not evaluate witness credibility when reviewing a sufficiency of the evidence claim).

{¶ 58} Contrary to appellant's claim, we find that the state produced evidence to link Davis to this murder. And, this evidence, if believed, established that the state proved beyond a reasonable doubt that appellant was guilty of these crimes for which he was convicted.

{¶ 59} Therefore, we find that the record contains sufficient evidence to support appellant's convictions for Murder, Aggravated Murder, Felonious Assault, Aggravated Robbery, Aggravated Burglary, Kidnapping and Tampering With Evidence.

{¶ 60} Appellant's second assignment of error on the issue of sufficiency of evidence is found not well-taken and is denied.

### *Manifest Weight*

{¶ 61} Without any additional argument, Davis also claims the verdict was against the manifest weight of the evidence. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the

16.

conflicting testimony. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, quoting *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

{¶ 62} In determining whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving any conflicts in the evidence, the jury clearly lost its way and thereby created such a manifest miscarriage of justice that the conviction must be reversed and a new trial must be ordered. *State v. Jasso*, 6th Dist., Fulton No. F-22-001, 2023-Ohio-209, ¶ 21-26, citing *Thompkins* at 387. A conviction should be reversed on manifest weight grounds only in the most exceptional case in which the evidence weighs heavily against the conviction. *Id*.

{¶ 63} Upon our review of the record, we find the jury did not lose its way and the judgment convicting Davis of Murder, Aggravated Murder, Felonious Assault, Aggravated Robbery, Aggravated Burglary, Kidnapping and Tampering With Evidence and is not against the manifest weight of the evidence.

{¶ 64} Appellant's second assignment of error on the issue of manifest weight is found not well-taken and denied.

17.

**Conclusion**

{¶ 65} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24(A)(4).

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, J.

Myron C. Duhart, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.